UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BARBARA C. MOORE,
DAVID BLANK,
JOANNE BONSACK,
BRUCE D. HANSON,
RICHARD K. HAWKINS,
KENNETH P. KLOPFER,
ELIZABETH MARTIN,
CYNTHIA WILLIAMS,
LOIS JACKSON,
JAY JACKSON

        *Plaintiffs,*

  -against-           **COMPLAINT**
                 **AND JURY DEMAND**

TOWN OF BOSTON,
MARTIN BALLOWE, individually and in his official capacity
as Boston Town Supervisor,
WILLIAM FERGUSON, individually and in his official
capacity of Boston Town Code Enforcement Officer,

        Defendants.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiffs BARBARA C. MOORE, DAVID BLANK, JOANNE BONSACK, BRUCE D. HANSON, RICHARD K. HAWKINS, KENNETH P. KLOPFER, ELIZABETH MARTIN, CYNTHIA WILLIAMS, LOIS JACKSON and JAY JACKSON hereby demand a jury trial of all issues so triable.

**I. INTRODUCTION**

1.   This is an action seeking monetary damages and injunctive and declaratory relief to redress illegal conduct by the defendants, who deprived the plaintiffs of various rights and privileges secured by the Constitution and laws of the United States,

specifically the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

## II. JURISDICTION

2. This action seeks to enforce rights guaranteed by the Constitution and laws of the United States and is brought pursuant to 42 US.C. §1983. Jurisdiction is based upon 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

3. The substantive federal claims are brought pursuant to 42 U.S.C. §1983.

4. Venue is proper in the Western District of New York, under 28 U.S.C. §1391(b), because all parties reside in this District and because all of the events or omissions giving rise to the claims occurred within this District.

## III. PARTIES

5. Plaintiff BARBARA C. MOORE, is, and at all times hereinafter mentioned was, a resident of the Town of Boston, County of Erie and State of New York.

6. Plaintiff DAVID BLANK, is, and at all times hereinafter mentioned was, a resident of the Town of Boston, County of Erie and State of New York.

7. Plaintiff JOANNE BONSACK, is, and at all times hereinafter mentioned was, a resident of the Town of Boston, County of Erie and State of New York.

8. Plaintiff BRUCE D. HANSON, is, and at all times hereinafter mentioned was, a resident of the Town of Boston, County of Erie and State of New York.

9. Plaintiff RICHARD K. HAWKINS, is, and at all times hereinafter mentioned was, a resident of the Town of Boston, County of Erie and State of New York.

10. Plaintiff KENNETH P. KLOPFER, is, and at all times hereinafter mentioned was, a resident of the Town of Boston, County of Erie and State of New York.

11. Plaintiff ELIZABETH MARTIN, is, and at all times hereinafter mentioned was, a resident of the Town of Boston, County of Erie and State of New York.

12. Plaintiff CYNTHIA WILLIAMS, is, and at all times hereinafter mentioned was, a resident of the Town of Boston, County of Erie and State of New York.

13. Plaintiff LOIS JACKSON is, and at all times hereinafter mentioned was, a resident of the Town of Boston, County of Erie and State of New York.

14. Plaintiff JAY JACKSON, is, and at all times hereinafter mentioned was, a resident of the Town of Boston, County of Erie and State of New York.

15. The defendant TOWN OF BOSTON is a municipal corporation operating under the laws of the State of New York with offices in Boston, New York.

16. Defendant MARTIN BALLOWE is a resident of Boston, New York in Erie County. He is sued individually and in his official capacity as Town Supervisor.

17. Defendant WILLIAM FERGUSON is a resident of Boston, New York in Erie County. He is sued individually and in his official capacity as a Boston Town Code Enforcement Officer.

18. At all times herein, the individual defendants were acting within the scope of their employment and under color of state law.

## IV. FACTUAL ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

19. This action involves two classes of plaintiffs, each residents of the Town of Boston, who, in varying degrees, have been and are aggrieved by an ordinance in the Town of Boston, described in detail below, that violates their right to post political signs on their property.

20. The first class of plaintiffs, BARBARA C. MOORE, DAVID BLANK, JOANNE BONSACK, BRUCE D. HANSON, KENNETH P. KLOPFER, ELIZABETH MARTIN, LOIS JACKSON and JAY JACKSON have been prosecuted for violating the ordinance.

21. They continue to post signs and thus are threatened with further prosecutions.

22. The second class of plaintiffs, RICHARD K. HAWKINS and CYNTHIA WILLIAMS, consists of persons who have posted political signs and fear they will soon be prosecuted.

23. In the last several months, an ongoing dispute has existed between the Boston Town Clerk, Jennifer A. Mulé and members of the Town Board including Supervisor Martin Ballowe and Councilmen Jay Boardway and Jeffrey Genzel. See, C. Mahoney, "Boston town clerk resisting board's changes," Springville Journal, March 8, 2016.

24. The dispute concerns political issues and has been covered by the media.

25. A Buffalo News article[1] dated January 8, 2016, stated:

"The Boston Town Board is in the midst of a messy dispute over staffing in the Town Clerk's Office. Last Monday, the State Police were called to the office of Town Clerk Jennifer A. Mulé. And Wednesday, the board retained attorney Brian W. Doyle to represent it in a possible legal dispute with Mulé.

"At the center of the dispute is that Mulé recently appointed Elizabeth A. Martin and Sandra L. Quinlan to remain as her deputy town clerks, which she said she did Monday. However, the board appointed Maryann Cumming Mehs and Brianna Boncal as part-time clerks in the office. Councilman Jay P. Boardway said this was done because Martin and Quinlan did not reapply for their positions by the Dec. 9 deadline.

---

[1] "Dispute over staffing of Town Clerk's Office flares up in Boston."

"As a result, Boardway said, Martin and Quinlan have been essentially volunteering their services to the town since Monday. "They are not paid employees of the Town of Boston," Boardway said, adding that they will not be paid for any work performed this week. According to Boardway, Mulé came into the office at about 8:30 a.m. Monday, swore in Martin and Quinlan as her deputies and then refused to let Mehs and Boncal in the office. State Police were called in and were there for nearly two hours, Boardway said, but they determined that it was a civil matter rather than one involving possible criminality.

"Boardway said that Mehs and Boncal have shown up for work each day but that they have been cross-training in other offices because Mulé will not work with them. Boardway said the issue is simple. Martin and Quinlan did not reapply for their jobs, he said, adding that he was told that they gave their information to Mulé and that she did not give it to the Town Board.

"As soon as the deadline passed, Boardway said, the town placed an ad for the two positions and received seven applications. The board interviewed all seven applicants and chose Mehs and Boncal. Boardway said he hopes the issue is resolved soon because he is concerned about liability issues with Martin and Quinlan performing duties of deputy town clerk when they are not employed by the town.

"Mulé said that in the past, there were no specific dates when applications had to be submitted. She also said that in the past, all applicants sent résumés to the office of the clerk, who then would send the information on to the board. She said she had sent out a letter asking that résumés be returned by Dec. 14, and said she heard later that Supervisor Martin A. Ballowe was said to have informed about 10 employees to submit their letters to reapply by Dec. 9. According to Mulé, Town Attorney Michael L. Kobiolka, who was appointed as town attorney through Dec. 31, 2017, did not submit his letter to reapply until Dec. 27.

"Mulé also said Martin and Quinlan did not reapply for their positions because she intended, as part of her duties, to appoint them as deputy town clerks. She believes that with 11 combined years of experience that they are the most qualified. The town clerk said that she has nothing personal against Mehs and Boncal, and feels bad that they have been caught in the middle of the dispute. Mulé and the board have been at odds for several months and said this issue has now become personal for her. She said that while Ballowe is her future brother-in-law, they are not now related. Mulé said she was informed recently that instead of one full-time deputy clerk and a part-time clerk, the board decided to cut the hours of the full-time member to part time, and cut the hours of the part-time clerk even more.

"She added that she also is concerned because the board hired two office clerks, not town clerks, and that they cannot legally perform some functions that town clerks do until she deputizes them. Mulé said she has not made up her mind about whether to bring a lawsuit against the board. "It's going to depend," she said. "I have more things to look into." She said that includes taking a look at the 2016 budget that was passed in November, in which the board approved hiring town clerks."

26. The plaintiffs reserve the right to contest some of the facts alleged in the article and cite it here primarily to show the political nature of the controversy.

27. Section 95-7B of the Boston Town Code states:

"The following temporary signs are permitted in any use district but require a permit as provided herein. All signs of a temporary nature, such as political posters, banners, promotional devices and other signs of a similar nature, may be granted a temporary permit for a period not to exceed 30 days, provided that such signs are not attached to fences, trees, utility poles or the like and further provided that such signs are not placed in a position that will obstruct or impair vision or traffic or in any manner create a hazard or disturbance to the health and welfare of the general public. A fee of $10 shall be paid upon the issuance of a permit for such sign or group of signs. Upon termination of the campaign for which said signs, posters, banners or promotional devices were erected, the same shall be immediately removed from said property."

28. The Supreme Court issued a landmark decision on June 18, 2015 that directly pertains to the ordinance in this case.

29. *Reed v. Town of Gilbert*, 135 S.Ct. 2218 (2015), states:

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech." U.S. Const., Amdt. 1. Under that Clause, a government, including a municipal government vested with state authority, "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dept. of Chicago v. Mosley,* 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests. *R.A.V. v. St. Paul,* 505 U.S. 377, 395, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.,* 502 U.S. 105, 115, 118, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991).

6

2227*2227 Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."

30. Laws that discriminate against speech according to content are subject to strict scrutiny requiring the government to show that the ordinance is narrowly tailored to advance a compelling state interest.

31. As a restriction on political speech, the ordinance is presumptively unconstitutional. *Ladue v. Gilleo,* 512 U.S. 43 (1994); *Reed v. Town of Gilbert, Ariz*, 135 S. Ct. 2218 (2015).

32. On August 3, 2016, Magistrate Judge Jeremiah J. McCarthy recommended that summary judgment be granted against the Village of Perry for violating the First Amendment by enforcing an ordinance similar to the one at issue in this case. *Grieve v. Village of Perry,* 15-CV-365 (W. D. N. Y.).

33. District Court Judge Richard J. Arcara adopted the recommendation on August 25, 2016. *Grieve v. Village of Perry,* 2016 U. S. Dist. LEXIS 113993.

34. As in the present case, *Grieve v. Village of Perry* involved enforcement of a permit requirement against local political signs while residents who posted political signs not pertaining to the Village of Perry were not prosecuted.

35. The present ordinance has numerous specific defects that violate the First Amendment as follows.

36. The definition of "sign" discriminates on the basis of content by excluding the flag of "any nation," state or Town. Thus, a person may display the flag of North Korea with impunity but displaying a Trump sign without permission can lead to a prosecution. See, *Reed v. Town of Gilbert, Ariz*, *supra*.

37. The ordinance also discriminates based on content by excluding "the decoration of the premises during religious, patriotic or holiday seasons."

38. Thus, the ordinance favors speech such as "America—love it or leave it," displayed on the Fourth of July over speech such as "I Support the Town Clerk" displayed on the very same day. *Id.*

39. The ordinance discriminates on the basis of content by excluding various signs from a permit requirement while mandating permits for other forms of speech. See, 95-6 and 95-7(C). Thus, real estate signs, professional nameplates, signs for special events and activities of nonprofit institutions or organizations, construction signs, multilisting signs, special purpose building announcement signs, and agricultural signs are given a preference over political signs. *Id.*

40. The requirement of permission to display a political sign is unconstitutional.

41. The requirement of a fee for a political sign is unconstitutional.

42. It is not uncommon for citizens to post numerous political signs on their property such that a fee of $50 for signs is quite plausible.

43. There are, in this stagnant economy, many citizens who cannot afford the fee and could not afford the gas to get the car down to town hall to file for a permit.

44. Worse yet, the ordinance discriminates against political speech in this regard by charging ten dollars for political signs but waiving any fee for temporary signs for non-profit events and for traffic control signs. See, Town of Boston Schedule of Fees (2015).

45. The restriction on displaying a political sign for more than thirty days is unconstitutional.

46. The thirty day restriction appears to be based on the assumption that all political signs pertain to an election, an obvious falsehood.

47. Many signs such as the ones at issue in this case, are not targeted to influencing a specific event on a single date.

48. The plaintiffs BARBARA C. MOORE, DAVID BLANK, JOANNE BONSACK, BRUCE D. HANSON, KENNETH P. KLOPFER, ELIZABETH MARTIN, LOIS JACKSON and JAY JACKSON were charged by information dated on or about June 13, 2016 with violating Town Local law 95-7B.

49. The informations allege in substance that: "The owner has been notified previously to remove or apply for a permit for a temporary sign, for signs located on the premises. Owner failed to remove or apply for a permit in violation of Town of Boston sign ordinance Section 95-7B."

50. On that date, the plaintiff BARBARA MOORE did display on her property two signs:
    a. "I Support the Boston Town Clerk".
    b. "[No] Fracking."

51. Other persons charged with violating the sign ordinance in recent weeks had displayed the "I Support the Boston Town Clerk" and/or a sign advertising the website, "www.boston-ny.com."

52. Although that website was mainly non-political, it became associated in the minds of Town authorities with support of the Town Clerk.

53. Significantly, the plaintiff BARBARA MOORE's anti-fracking sign had been on display for several years, however, no warning letter or summons was received in connection with that sign.

54. There is no question that these signs constitute political speech protected by the First Amendment.

55. The ordinance is also being selectively enforced in violation of equal protection of the laws.

56. There are a variety of political signs up in the Town; however, the individuals presently being prosecuted are those who have put signs up in support of the present Town Clerk, who is having a dispute with some members of the Town Board.

57. To establish a violation of the Equal Protection Clause based on selective enforcement, a defendant must show that (1) "the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999); LaTrieste Rest. & Cabaret Inc. v. Vill. of Port Chester, 40 F.3d 587, 590 (2d Cir. 1994); *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980), *cert. denied*, 450 U.S. 959 (1981).

58. A policy designed to inhibit freedom of speech satisfies the second prong of the test for selective enforcement. *LaTrieste Rest. & Cabaret Inc. v. Vill. of Port Chester*, *supra*.

59. About fifteen residents received letters demanding they take their signs down or apply for a permit.

60. Each one of those residents had been displaying a sign in support of the Town Clerk and/or a sign promoting a website in support of the town clerk.

61. Several residents took their signs down in response to the letters and about ten residents were charged in court with violations of the town ordinance.

62. On the other hand, there are as many as seventeen residents who are displaying a sign in support of Donald Trump for longer than thirty days who, on information and belief, have not applied for a permit and have not been warned or prosecuted.

63. There are an additional twenty-one residents who have posted a "Repeal the SAFE Act" sign without a permit and who, on information and belief, have not been warned or prosecuted.

64. There are at least four other homes with signs of a political nature ("We [heart] Mercy Nurses—ReformCatholicHealth.com" (a pro-union website), "peace prints," Bernie Sanders and a Confederate flag), without permits, that apparently have received no warning and have not been prosecuted.

65. In a conversation with the defendant at the Town Hall on or about June 9, 2016, the defendant, William Ferguson, Code Enforcement Officer, admitted that he did not send warning letters to residents who posted "Repeal the SAFE Act signs" and stated, "I never even thought of that."

66. As to why some people who posted signs got letters but others did not, the defendant stated, "That's a valid point and one that has to be looked at."

67. The defendant stated, with respect to the warning letter sent to the defendant, "I don't know what's going to happen. I have to meet with the Supervisor."

68. Evidently, the Supervisor instructed him to file charges.

69. The Supervisor, as noted below, is in the midst of a bitter political dispute with the Town Clerk.

70. Significantly, the warning letter to the defendant was unsigned.

71. In the aforementioned conversation with the defendant, the defendant implied that he did not issue the warning letter and that it was generated by the Supervisor's office.

72. A FOIL request was filed with the Town of Boston on June 23, 2016, asking for copies of all sign permits issued by the town from June 1, 2015 to the present.

73. Only four permits were granted.

74. None were valid in 2016, the period of concern in this case.

75. These permits purport, against all logic, to allow one entity, a political party, to apply for permits for some unspecified number of residences.

76. This attempted "end run" around the ordinance shows the impracticality of expecting each and every resident to apply for and pay for a permit, a practice largely unknown in other towns and cities across Western New York.

77. Thus, on information and belief, the Town engaged in a deliberate attempt to selectively enforce this unconstitutional ordinance, long ignored or

winked at, against only those who support the current Town Clerk in her ongoing dispute with members of the Town Board.

## V. LEGAL CLAIMS

### FIRST CAUSE OF ACTION—FIRST AMENDMENT

78. The ordinance at issue is unconstitutional on its face pursuant to the First Amendment.

79. The defendants, acting jointly and severally, are enforcing or threatening to enforce an unconstitutional ordinance.

80. The TOWN OF BOSTON is a proper party herein since the ordinance and its enforcement is the official policy of the Town as endorsed and enforced by its final policymakers.

81. The defendants' actions violated the Plaintiffs' clearly established right to free speech as guaranteed by the First Amendment to the United States Constitution.

82. The individual Defendants knew, or reasonably should have known, that their conduct violated the Plaintiffs' clearly established constitutional right to free speech.

83. The Defendants acted with intent to violate, or with deliberate or reckless indifference to, the Plaintiffs clearly established First Amendment rights.

84. At all times relevant herein, the Defendants were acting under color of state law.

85. As a direct result of the Defendants' conduct, the Plaintiff has suffered actual damages, attorneys' fees, and costs.

## SECOND CAUSE OF ACTION—FIRST AMENDMENT

86. The ordinance is unconstitutional as applied to the present facts.

87. The defendants, acting jointly and severally, are enforcing or threatening to enforce an unconstitutional ordinance in a discriminatory manner.

88. The TOWN OF BOSTON is a proper party herein since the ordinance and its selective enforcement is the official policy of the Town as endorsed and enforced by its final policymakers.

89. The defendants' actions violated the Plaintiffs' clearly established right to free speech as guaranteed by the First Amendment to the United States Constitution.

90. The individual Defendants knew, or reasonably should have known, that their conduct violated the Plaintiffs' clearly established constitutional right to free speech.

91. The Defendants acted with intent to violate, or with deliberate or reckless indifference to, the Plaintiffs clearly established First Amendment rights.

92. At all times relevant herein, the Defendants were acting under color of state law.

93. As a direct result of the Defendants' conduct, the Plaintiffs have suffered actual damages, attorneys' fees, and costs.

## THIRD CAUSE OF ACTION—FIRST AMENDMENT

94. The plaintiffs have been prosecuted in retaliation for their political speech and activities in violation of the First Amendment.

95. The defendants, acting jointly and severally, are enforcing or threatening to enforce an unconstitutional ordinance in retaliation for the plaintiffs' exercise of their First Amendment rights.

96. The TOWN OF BOSTON is a proper party herein since the retaliatory enforcement is the official policy of the Town as endorsed and enforced by its final policymakers.

97. The defendants' actions violated the Plaintiffs' clearly established right to free speech as guaranteed by the First Amendment to the United States Constitution.

98. The individual Defendants knew, or reasonably should have known, that their conduct violated the Plaintiffs' clearly established constitutional right to free speech.

99. The Defendants acted with intent to violate, or with deliberate or reckless indifference to, the Plaintiffs' clearly established First Amendment rights.

100. At all times relevant herein, the Defendants were acting under color of state law.

101. As a direct result of the Defendants' conduct, the Plaintiffs have suffered actual damages, attorneys' fees, and costs.

## FOURTH CAUSE OF ACTION—EQUAL PROTECTION

102. The plaintiffs have been selectively prosecuted, or fear such prosecution in the near future, while numerous other residents who have violated the ordinance have not been prosecuted--in violation of the equal protection clause of the U. S. Constitution.

103. The defendants, acting jointly and severally, are enforcing or threatening to enforce an unconstitutional ordinance in a discriminatory manner.

104. The TOWN OF BOSTON is a proper party herein since the ordinance and its discriminatory enforcement is the official policy of the Town as endorsed and enforced by its final policymakers.

105. The defendants' actions violated the Plaintiffs' clearly established right to equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution.

106. The individual Defendants knew, or reasonably should have known, that their conduct violated the Plaintiffs' clearly established constitutional right to equal protection of the laws.

107. The Defendants acted with intent to violate, or with deliberate or reckless indifference to, the Plaintiffs clearly established Fourteenth Amendment rights.

108. At all times relevant herein, the Defendants were acting under color of state law.

109. As a direct result of the Defendants' conduct, the Plaintiff has suffered actual damages, attorneys' fees, and costs.

## VI. DAMAGES

110. On account of the Defendants' actions and violations of their rights as set forth above, the Plaintiffs suffered actual damages, including loss of liberty, pain, suffering, humiliation and emotional distress, and were forced to expend funds for attorneys' fees and related expenses in defense of the criminal charges against them.

111. Plaintiffs are entitled to recover damages, attorney's fees (in this action and for the criminal prosecution), costs, and punitive damages.

112. The plaintiffs also request injunctive and declaratory relief, specifically, an order barring the Town from engaging in any future prosecutions under the statute and a declaration that the ordinance is unconstitutional and thus void.

113. Plaintiffs demand prejudgment interest on all elements of out-of-pocket loss including attorneys' fees.

## VII. PRAYER FOR RELIEF

WHEREFORE Plaintiffs request that this Court:

1. Assume jurisdiction of this action;

2. Enter judgment against the Defendants and in favor of the Plaintiffs;

3. Award each Plaintiff compensatory damages, including prejudgment interest on any out of pocket damages;

4. Impose punitive damages against each individual defendant;

5. Award the plaintiffs appropriate injunctive and declaratory relief.

6. Award Plaintiffs all costs and disbursements incurred in the prosecution of this action, including reasonable attorneys' fees under 42 U.S.C. §1988; and

7. Enter such other and further relief as the Court deems just and proper.

Dated:   Buffalo, New York
         October 17, 2016           /s/ James Ostrowski
                                    JAMES OSTROWSKI
                                    Attorney for Plaintiffs
                                    63 Newport Ave.
                                    Buffalo, New York 14216
                                    (716) 435-8918
                                    jameso@apollo3.com